808 February 13, 2014 No. 11

IN THE SUPREME COURT OF THE
STATE OF OREGON

Patricia MILNE,
Cliff Sain-Thomason,
and Wayne Simmons,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

(SC S061785)

En Banc

On petition to review ballot title filed November 19, 2013; considered and under advisement on January 7, 2014.

Kevin L. Mannix, Kevin L. Mannix, P.C., Salem, filed the petition and reply for petitioners on review.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent on review. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BALDWIN, J.

Ballot title referred to the Attorney General for modification.

**BALDWIN, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 31 (2014). *See* ORS 250.085(2) (requirements for review of certified ballot titles). We review ballot titles for substantial compliance with ORS 250.035. *See* ORS 250.085(5) (so stating). For the reasons explained below, we refer the ballot title to the Attorney General for modification. ORS 250.085(8).

Initiative Petition 31 ("Oregon Lottery Local Control Act") is a proposed constitutional amendment that would dedicate 50 percent of state lottery net proceeds to a "county revenue distribution fund." Currently, the Oregon Constitution provides for the statewide expenditure of lottery proceeds for specified purposes. Or Const, Art XV, § 4. All net proceeds are to be used for the purposes of "creating jobs, furthering economic development, financing public education in Oregon or restoring and protecting Oregon's parks, beaches, watersheds and native fish and wildlife." Or Const, Art XV, § 4(3). Two provisions specifically require allocations by percentage of net proceeds for certain purposes. *See* Or Const, Art XV, § 4(4)(d) (requiring 18 percent allocation for education); Or Const, Art XV, § 4(8) (requiring 15 percent allocation for parks and natural resources). Additionally, by statute, percentages of net funds are allocated to other state programs related to lottery activities. *See* ORS 461.549(2) (one percent for gambling treatment); ORS 461.543(4) (one percent for sports lottery account); ORS 461.547(1) (two-and-a-half percent for economic development activities).

Initiative Petition 31 would amend the Oregon Constitution to provide that "50% of the net proceeds from the State Lottery shall be deposited in a county revenue distribution fund to be created by the Legislative Assembly." Oregon Lottery Local Control Act, § 2. The measure provides that "[t]en percent of [those] moneys must be allocated and distributed to all counties in an equal amount for each county" and "[n]inety percent of the moneys must be allocated and distributed to all counties in the same proportion for each county as the State Lottery generates gross proceeds from such county." *Id.* § 3(a), (b). The measure further

provides that the funds distributed to all counties shall be used for "any of the following public purposes: creating jobs; furthering economic development; financing public education; restoring and protecting parks, beaches, watersheds and native fish and wildlife; and providing public safety." *Id.* § 4. Thus, counties would be permitted to utilize distributed funds for the same general purposes as those that the constitution currently dictates for the state, but, unlike the state, counties would be allowed to also expend lottery funds for the purpose of providing for public safety. Moreover, unlike what the constitution currently dictates for the state, counties would not be subject to the requirement that 18 percent of the funds be allocated for educational purposes and 15 percent be allocated for parks and natural resources.[1] Under the measure, the legislature "may not establish substantive limitations" on how counties allocate distributed funds "or [impose] additional restrictions on the use of those moneys." *Id.* § 6.

The Attorney General certified the following ballot title:

**"Amends Constitution: Fifty percent of net lottery proceeds distributed to counties, reducing amount available for state appropriations**

"**Result of 'Yes' Vote**:   'Yes' vote requires depositing 50% of lottery net proceeds in fund for distribution to counties; reduces amount of lottery funding available for legislative appropriations.

"**Result of 'No' Vote**:   'No' vote retains using 100% of lottery net proceeds for legislative appropriations for specified public purposes, including: economic development, public education, protecting natural resources.

"**Summary**:   Amends Constitution. Constitution currently mandates 100% of state lottery net proceeds be used to create jobs; further economic development; finance a public education stability fund and a school capital matching

---

[1] The measure provides, without further restrictions, that "[e]ach county may distribute funds to other units of government such as cities, towns, or school districts, operating within the county, provided the funds are used for purposes listed in paragraph (4) of this section." Oregon Lottery Local Control Act, § 5.

fund; finance a parks and natural resources fund to be used for specified purposes, including restoration and protection of parks, beaches, watersheds, and native fish/wildlife. Measure requires 50% of lottery net proceeds be deposited in 'county revenue distribution fund' and distributed to counties: ten percent divided equally between counties, remainder distributed based on each county's lottery sales. Reduces net lottery proceeds available for appropriation by legislature. Counties shall use funds for currently specified purposes, plus public safety. Counties may distribute funds to other governmental units within county for such purposes. Other provisions."

Petitioners challenge the caption, the "yes" and "no" vote result statements, and the summary. We begin with petitioners' challenge to the caption.

ORS 250.035(2)(a) provides, in pertinent part, that the ballot title of a state measure shall consist of "[a] caption of not more than 15 words that reasonably identifies the subject matter of the state measure." Petitioners contend that the caption suggests that passage of the measure could result in a 50-percent reduction in lottery proceeds available for currently identified public purposes. Petitioners argue that the caption—in particular, the phrase "reducing amount available for state appropriations"—is inaccurate and misleading because the measure would still require counties to utilize funds for purposes substantially the same as those for which the funds may be used by the state. Although this measure does not subject counties to the requirement that certain percentages of net proceeds be allocated for specific purposes and prohibits the legislature from further restricting counties in determining how proceeds would be allocated, it is misleading, according to petitioners, to suggest that counties would be totally unrestricted in the use of the lottery proceeds.

The Attorney General responds that the caption is neither inaccurate nor misleading because "the measure distributes 50% of net lottery proceeds to the counties, thereby reducing the amount of net lottery proceeds available for distribution by the state." Further, the Attorney General argues that "[t]he caption is not required to explain

the measure's 'restrictions' on counties' use of the funds; the permitted uses are appropriately set out in detail in the ballot title summary."

In *Greene v. Kulongoski*, 322 Or 169, 175, 903 P2d 366 (1995), we observed that a caption serves as the "headline" for the ballot title and "provides the context for the readers' consideration of the other information in the ballot title." We affirmed the principle that a caption "satisfies the statutory requirement that it must 'reasonably identify' a measure's subject if *** it states or describes the subject accurately and in terms that will not confuse or mislead potential petition signers and voters." *Id.* at 174-75; *see also Feeney v. Roberts*, 309 Or 324, 327-28, 787 P2d 485 (1990) (caption modified because the term "vote," in context, obscured the measure's effect and made it difficult for voters to understand its subject); *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 173-74, 777 P2d 406 (1989) (term "protect" in caption did not reasonably identify subject of measure and was misleading because it suggested that voters might be simply confirming current state of law).

Here, the effect of this measure is to reduce lottery funding controlled by the state by 50 percent. That 50 percent would be distributed to counties and then allocated by counties for public purposes similar to those specified by current law, with the exception that counties could also provide funds for public safety. The certified caption obscures that significant fact and suggests that all lottery funding for current purposes would necessarily be reduced by 50 percent. The Attorney General is correct that counties, rather than state government, will have control of those lottery funds. We conclude, however, that the certified caption nevertheless obscures the effect of this measure, and further may cause voters to believe that counties would be totally unrestricted in the use of any lottery funds. For that reason, the caption does not reasonably identify the subject matter of this measure as required by ORS 250.035(2)(a).[2] We therefore refer the caption to the Attorney General for modification.

_____

[2] We agree with petitioners that the source of the problem here is the phrase "reducing amount available for state appropriations" in the caption. We note that substitution of that phrase with wording such as "to be allocated for specified purposes" would resolve the problem.

Petitioners also challenge the "yes" and "no" vote result statements. Under ORS 250.035(2)(b) and (c), the ballot title must include simple and understandable statements, of no more than 25 words each, that describe the result if the measure is approved and the result if the measure is rejected. The certified "yes" result statement states that the measure "requires depositing 50% of lottery net proceeds in fund for distribution to counties" and includes the phrase "reduces amount of lottery funding available for legislative appropriations." The latter phrase does not reasonably describe the result if the measure is approved for the same reasons we explained in rejecting the certified caption: It obscures the effect of this measure, and further suggests that the counties' allocation of lottery funds would be totally unrestricted if the measure passes. We therefore refer the "yes" result statement for modification.

We conclude that both the "no" result statement and the summary certified by the Attorney General substantially comply with the requirements of ORS 250.035.

Ballot title referred to the Attorney General for modification.